IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WESTERN STATES CONTRACTING, and TRITON GRADING & PAVING, LLC, <br><br> Plaintiffs, <br><br> GORDON SPILKER HUBER GEOTECHNICAL CONSULTANTS, INC., <br><br> Intervening Plaintiff, <br><br> vs. <br><br><br> JERALD M. SPILSBURY, as Trustee of the American Energy Management Profit Sharing Trust, et al., <br><br> Defendants. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br><br> Case No. 2:10-CV-1141-TC |
| AND ALL RELATED PARTIES AND CLAIMS. | |

In this construction lien case, which involves a multitude of parties, the court has before

it[1] a series of cross-motions for summary judgment.[2] The case arises out of the failure of a golf

course residential community construction project in Hurricane, Utah, known as the Collina

Tinta Development. After multiple entities did construction work at the site, they claimed they

were not paid for their work, so they filed mechanic's liens against the Collina Tinta

---

[1]The court has jurisdiction over the claims because the FDIC removed the state lien cases to this court. See June 26, 2012 Order & Mem. Decision (Doc. No. 186); December 12, 2013 Order (Doc. No. 337).

[2]See Doc. Nos. 248, 345, 355, 356, 368, and 375.

Development property and then filed lawsuits to enforce the liens. Various property owners have asked the court to invalidate the liens, contending that the construction liens are defective and in one additional case, excessive under Utah code.

For the reasons set forth below, the court holds that the mechanic's liens at issue in the motions (Doc. Nos. 248, 345, & 375) are valid and enforceable under Utah Code Ann. §§ 38-1-7 and 38-1-8, but the disputed question of whether Triton's lien is excessive cannot be resolved on the summary judgment record before the court. In addition, the court dismisses the Plaintiffs' quiet title claim but allows the mechanic's lien enforcement action to go forward.

## PROCEDURAL BACKGROUND

This case involves a large swath of land, a multitude of mechanic's liens, a multitude of parties, a set of original claims as well as multiple cross- and counter-claims, and a lengthy, complicated procedural history. This order focuses on a portion of the disputes in this case.

Plaintiffs Western States Contracting, Triton Grading & Paving, and Gordon Spilker Huber Geotechnical Consultants, Inc. are contractors who filed mechanic's liens on portions of property designated for a golf course, residential subdivisions, and commercial buildings (hereinafter, the Property). After they were not able to collect the amounts they claim are due, they and other claimants who faced the same issue filed lawsuits in state court to enforce the liens. The state court consolidated the Plaintiffs' cases with related cases filed by other lien holders on the same project.

When the Federal Deposit Insurance Corporation (FDIC-R) was appointed as a receiver for one of the lenders (ANB Financial) involved in the suits, FDIC-R removed the consolidated state case to federal court. Eventually, only claims affecting parcels of land on which FDIC-R

held a trust deed were kept here in federal court. (See Order of Severance (Doc. No. 186); Doc. No. 248 at 3-4.) FDIC-R has since transferred its claims to Defendant and Third-Party Plaintiff CRE/ADC Venture 2012-1, LLC (CRE), which is now a substitute party for FDIC-R.

The Toquerville Defendants[3] filed a Motion for Summary Judgment to Invalidate Liens and to Expunge Lis Pendens and Liens Relating Thereto (Doc. No. 248) [hereinafter **"Toquerville Defendants' Motion"**].[4] The Toquerville Defendants do not address all of the lien claims filed in this case. Instead, they focus on the validity of mechanic's liens filed by the following parties: Western States Contracting; Triton Grading & Paving, LLC; Gordon Spilker Huber Geotechnical Consultants, Inc.; Hy-Rock Excavation, LLC, and 3-Rivers, Inc.[5] (the Claimants).[6]

---

[3]Collectively, the Toquerville Defendants are Jerald M. Spilsbury (individual), American Energy (J. Spilsbury, trustee), Toquerville Enterprises, Summit-Hurricane Development, Daniel Spilsbury (individual), Marlowe's Paradise; Estate of Robert Mendenhall (Vyonne Mendenhall, administrator); RTM Trust (trustees Marc and Lori Mendenhall); Vyonne Mendenhall (individual); and VSM Trust (Vyonne Mendenhall, trustee).

[4]FDIC-R (now CRE) joined in the Toquerville Defendants' motion. (See Doc. Nos. 254, 325.)

[5]3-Rivers, Inc. originally filed a complaint in state court against a set of the Toquerville Defendants (among others) to enforce its lien (see Ex. 22 to Doc. No. 248), and that complaint was removed to federal court. 3-Rivers, although named as a cross-defendant by various parties, has not participated in the federal case. The Toquerville Defendants ask the court to either grant default judgment against 3-Rivers, Inc. in favor of the Toquerville Defendants or find, based on the merits, that 3-Rivers, Inc.'s lien is invalid. But the court cannot issue default judgment against 3-Rivers on 3-Rivers' state law claim against the Toquerville Defendants. And the court cannot find any evidence that the Toquerville Defendants filed a crossclaim (or state counterclaim) against 3-Rivers. Unless the Toquerville Defendants can point to documentation that they have filed such a claim for the court to adjudicate, the court will only address the motion for summary judgment against 3-Rivers.

[6]Three other parties subject to the Toquerville Defendants' motion—ECCO Equipment, Inc., Psomas Corporation, and Worldwide Rental Services—have since settled, so the portions of

Following the Toquerville Defendants' motion and subsequent discovery,[7] Plaintiffs

Western States Contracting and Triton Grading & Paving LLC filed a cross-motion for partial

summary judgment.  They raise the same issues raised in the Toquerville Defendants' Motion.

(See Doc. No. 345 [hereinafter **"Plaintiffs' Cross Motion"**].)[8]

CRE and the Toquerville Defendants have filed additional parallel motions for partial

summary judgment against Plaintiffs Western States and Triton.  (See Doc. Nos. 356 & 368

[hereinafter **"CRE/Toquerville Motions"**].)  In those motions, they assert a new, rather

technical, basis for challenging the Plaintiffs' liens, contending that the Plaintiffs failed to file a

cause of action to enforce their liens under the Utah Mechanic's Lien Act.  They also seek

dismissal of the Plaintiffs' quiet title action.

Finally, the Toquerville Defendants have filed a third motion specifically challenging

Triton's liens on an alternative basis.  They now contend that Triton has filed an excessive lien,

and they ask for permission to amend their Answer to assert counterclaims against Triton under

Utah Code Ann. § 38-1-25(2) (2008) (allowing property owner to recover damages for an

excessive lien filed against its property).  (See Doc. No. 355 [hereinafter **"Excessive Lien**

---

the Toquerville Defendants' motion against those three parties are moot.

[7]After the court held an initial hearing on the Toquerville Defendants' motion for
summary judgment, the court took the motion under advisement to allow the parties time to
conduct additional discovery and submit supplemental briefs.

[8]Third-Party Defendant Ranch Excavation & Construction, Inc. filed a motion for partial
summary judgment that essentially adopts arguments set forth in the Plaintiffs' Cross Motion.
(See Doc. No. 375.)  It asks the court to address the validity of its liens as well and it adopts the
arguments set forth in the Plaintiffs' Cross Motion.  Because Ranch Excavation's motion does
not provide any supporting documentation identifying its own liens or the specific content of
those liens, the court denies the motion without prejudice.

**Motion"**].)

**FACTUAL BACKGROUND**[9]

**The Collina Tinta Development Project**

The Collina Tinta Development in Hurricane, Utah, (the Project) was designed to become a Jack Nicklaus golf course community. (See Collina Tinta advertising brochure ("Vision Book"), Ex. 4 to Plaintiffs' Supplemental Mem. (Doc. No. 341-1) at 76.) According to the "Master Construction Contract" between Summit-Hurricane and Triton Grading & Pavement, the developers of the master planned community project "intended to include both residential (single-family and multi-family) and commercial developments (including office and retail)." (Doc. No. 345-3 at 2 (Recital A).)

When the Claimants began work on the Project, the approximately 577 acres of land (the Property) was undeveloped. The Property did not contain any buildings or any other distinguishing marks to delineate separate ownership parcels, although it was divided into tax identification ("tax ID") parcels.

Eventually, the Project ran into financial troubles, and multiple subcontractors working on the Project were not paid for their labor and/or materials. The contractors filed notices of liens and eventually filed lawsuits to foreclose on the Property and recover what was owed to them for their work.

**The Liens**

The liens of five subcontractors who performed work on the Project (the Liens) are at

---

[9]The material facts, which were taken from the parties' briefs, are not genuinely disputed.

issue in the cross-motions before the court.

       1.      <u>Gordon Spilker Huber Geotechnical Consultants, Inc.</u>

From December 2005 to May 2008, Gordon Spilker Huber Geotechnical Consultants, Inc. performed geotechnical work on the Property. In its August 13, 2008 Lien for $111,528.60, Gordon Spilker listed "Summit Development and Management, Summit-Hurricane Development, Inc.; Toquerville Enterprises, LLC and/or Jerald M. Spilsbury, as Trustee of the American Energy Management Profit Sharing Trust" as reputed owners of some or all of the Property. (<u>See</u> Aug. 2008 Lien (Ex. 15 to Doc. No. 248) at 1.) Gordon Spilker listed tax ID numbers of parcels affected by its Lien and attached real property descriptions for Parcels 1, 2, 3, and 4; golf course holes; a club house; a driving range; maintenance yard, and "activity center." It identified Summit Development and Management (Summit DM) as the party to whom Gordon Spilker provided labor and/or materials.

       2.      <u>Triton Grading & Paving LLC</u>

Triton Grading & Paving LLC began furnishing materials and labor in December 2006. Triton, who entered into a "Master Construction Contract" with Summit-Hurricane Development, Inc. (identified in the contract as "owner"), performed grading and paving work at the site. (Doc. No. 345-3 at 2.) The Master Contract referred to the Project as a single project—a "master planned community" to be developed "in phases." (<u>Id.</u>) Triton's First Lien (dated May 2, 2008, and amended June 25, 2008) is for $5,831,895.83. Triton's Second Lien (dated May 27, 2008, and amended June 25, 2008) is for $4,259,868.00. (Exs. 5-8 to Doc. No. 249.) Triton listed Summit DM as the reputed owner and the entity to whom Triton furnished materials and/or labor. It also lists tax parcel identification numbers affected by the liens. (The

tax parcel identification numbers were assigned by the City of Hurricane.)

### 3. Western States Contracting

Western States began working on the Project in April 2007. Western States does excavation and utility work. Western States' Lien (dated May 2, 2008, and amended June 25, 2008) is for $1,209,967.68. (See Ex. 3-4 to Doc. No. 249.) As did Triton, Western States listed Summit DM as the reputed owner and the entity to whom Western States furnished materials and/or labor. It also lists tax ID parcel numbers affected by its lien.

### 4. Hy-Rock Excavation LLC

Between August 2006 and May 2007, Hy-Rock performed earth moving and grading services for the Project on areas that were to be the golf course. (See Hy-Rock Excavation, LLC's Compl. in the Fifth Dist. Ct. for the State of Utah (Ex. 20 to Doc. No. 249) ¶¶ 1, 6; Hy-Rock's Oct. 8, 2008 Notice of Lien (Ex. 19 to Doc. No. 249).) Hy-Rock's Lien is for $157,551.14. Hy-Rock listed "Summit-Hurricane Development Inc./Summit Development and Management" as the reputed owners and stated that it provided labor and/or materials "to or at the request of" those same entities. Hy-Rock further identified the tax parcels affected by the lien, and then it attached property descriptions of golf course and development parcels.

### 5. 3-Rivers, Inc.

3-Rivers, Inc. performed blasting services on the Project from January 30, 2008, to February 7, 2008. (See 3-Rivers, Inc.'s State Complaint (Ex. 22 to Doc. No. 249); 3-Rivers' Aug. 2008 Notice of Lien (Ex. 21 to Doc. No. 249).) 3-Rivers' Lien is for $24,646.40. 3-Rivers listed Marlowe's Paradise, LLC as the reputed owner and owner of record. It also said it provided labor and/or materials to Summit DM.

**Commonalities Among the Liens**

All Claimants (with the exception of 3-Rivers) listed Summit DM as the reputed owner. (Additionally, Gordon Spilker listed Summit-Hurricane, Toquerville and American Energy as owners, and Hy-Rock also listed Summit-Hurricane as an owner.) 3-Rivers listed Marlowe's Paradise, LLC as the owner, but listed Summit DM as the builder and the party to whom the labor and/or materials were furnished.

All of the liens identify Summit DM as the entity to whom the claimant furnished "labor and/or materials." (Doc. No. 354 at 14.) The amounts of the liens were not allocated to any individual parcel within the property, although each lien identified the tax parcels affected by the work. The reason for this, according to the Claimants, is that they could not, as a practical matter, divide the work done (and, consequently, the amount owed) among parcels because the construction project was treated as one big development of land. The work—geotechnical work, blasting, excavation, earth moving, grading, and paving—began on undeveloped property with subcontractors performing what amounts to initial groundbreaking work on the project.

## ANALYSIS

**Summary Judgment Standard**

The parties seek summary judgment from the court under Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a party is entitled to summary judgment if he demonstrates, through pleadings, depositions, answers to interrogatories, admissions on file, or affidavits, that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when, after viewing the record and making all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-

moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

The opposing party's response must set forth specific facts showing a genuine issue for trial, and it "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient."  Anderson, 477 U.S. at 252.

1.    **Validity of Challenged Liens**

   a.    **Requirement That Mechanic's Lien Enforcement Action Be Filed**

The Toquerville Defendants and CRE both claim that Western States' and Triton's lien claims must be dismissed because neither Plaintiff filed a mechanic's lien enforcement action under the Utah Mechanic's Lien Act, Utah Code Ann. § 38-1-11 (2008) (the Act), and the deadline for doing so has long since passed.  Section 38-1-11 requires a claimant to file an action to enforce a lien within 180 days after the notice of claim under Section 37-1-7 is filed.

In essence, CRE and the Toquerville Defendants contend that what Western States and Triton are currently litigating in this court is not a mechanic's lien enforcement action because the Plaintiffs did not expressly cite to the mechanic's lien statute in the titles or names of their causes of action.  Their argument is easily overcome.

CRE and the Toquerville Defendants correctly point out that the Plaintiffs' Third Cause of Action is titled "Declaratory Relief" and cites to Utah's Declaratory Judgment Act.  They also correctly point out that the Declaratory Judgment Act does not create an independent cause of action.  They further seize on the fact that the First Cause of Action is titled "Breach of Contract" and that the Second Claim for Relief is called "Quiet Title" and contains a citation to Utah's

quiet title statute. (The court addresses the quiet title issue below.) But based on a reading of the complaint (not to mention the numerous briefs and arguments the parties (including the Toquerville Defendants and CRE) have filed since this case began), the Plaintiffs clearly intended to enforce their mechanic's liens under the Act, and anyone reading the complaint would be notified of that. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (U.S. 2007) (Federal Rule of Civil Procedure 8(a)(2) is intended to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A review of the factual allegations in the complaint makes it abundantly clear that the Plaintiffs have set out the elements of a mechanic's lien foreclosure action, have cited to statutory provisions and case law that address such a cause of action, and have requested relief available under the Act. (See, e.g., First Am. Compl. ¶¶ 7, 19-21, 27-45, 57, 59-61.)

The fact that the Plaintiffs did not use the exact words in the titles of their causes of action is not fatal to their claim. "Generally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim." Elliott Indus. Ltd. P'ship v. BP Amer. Prod. Co., 407 F.3d 1091, 1121 (10th Cir. 2005), quoted in McBeth v. Himes, 598 F.3d 708, 716 (10th Cir. 2010). The court holds that Plaintiffs have properly brought a cause of action under the Utah Mechanic's Lien Act to enforce their liens.

### b. Substantial Compliance with the Utah Mechanic's Lien Act

Plaintiffs have filed complaints under the Utah Mechanic's Lien Act (Act) to enforce

their liens through foreclosure of the property identified in the notices, with proceeds from the sale used to pay amounts due under the liens. The Toquerville Defendants and CRE ask the court to expunge the Lis Pendens and the liens, contending that the liens are materially defective and unenforceable because they do not comply with the requirements of the Act. Specifically, they claim the liens are void because the Claimants (1) incorrectly identified the owners of the property; and (2) failed to apportion claim amounts among the different parcels of property.

A person filing a construction service lien must publicly file a notice setting forth the following information:

   (i)    the name of the reputed owner if known or, if not known, the name of the record owner;

   (ii)   the name of the person:
           (A) by whom the claimant was employed; or
           (B) to whom the claimant furnished the equipment or material;

   (iii)  the time when:
           (A) the first and last labor or service was performed; or
           (B) the first and last equipment or material was furnished;

   (iv)  a description of the property, sufficient for identification;

   (v)   the name, current address, and current phone number of the claimant;

   (vi)  the amount of the lien claim;

   (vii)  the signature of the claimant or the claimant's authorized agent; [and]

   (viii) an acknowledgment or certificate as required under Title 57, Chapter 3, Recording of Documents[.]

Utah Code Ann. § 38-1-7(2)(a) (West 2008)[10] (emphasis added).

---

[10] In 2012, this section was re-codified at Utah Code Ann. § 38-1a-502.

Once the claimant files a mechanic's lien enforcement action, a party to the action may bring a motion to release the notice.  Utah Code Ann. § 78B-6-1304(1).  The court shall release the lien notice if "(a) the court receives a motion to release . . .; and (b) the court finds that the <u>claimant</u> has not established <u>by a preponderance of the evidence the probable validity</u> of the real property claim that is the subject of the notice."  Utah Code Ann. § 78B-6-1304(2) (emphasis added).  The Toquerville Defendants and CRE have filed such motions, which are now before the court.

In their motions, they maintain that the court must strictly construe the statutory filing requirements, and they cite to <u>Utah Savings & Loan Ass'n v. Mecham</u>, 366 P.2d 598, 599 (1961), to support their position.  The law in <u>Mecham</u> is outdated because the 1961 case was construing a different mechanic's lien statute that had "more cumbersome lien notice requirements" than the statute applicable to the liens here.  <u>Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.</u>, 798 P.2d 738, 745 (Utah 1990).

Today, the Act and court decisions issued after <u>Mecham</u> eschew such a rigid approach to determinations of lien validity.  Now, substantial compliance with the statute's filing requirements is sufficient to establish a valid lien.  The Act expressly states that "[s]ubstantial compliance with the requirements of this chapter <u>is sufficient</u> to hold and claim a lien."  Utah Code Ann. § 38-1-7(2)(b) (West 2008) (emphasis added).[11]  The Utah Supreme Court has reiterated the substantial compliance standard.  "Mechanic's liens are purely statutory, and lien claimants may only acquire a lien by complying with the statutory provisions authorizing them.

_____

[11]In 2012, this section was re-codified at Utah Code Ann. § 38-1a-306.

. . . Utah courts have recognized that substantial compliance with these provisions is all that is required." Projects Unlimited, 798 P.2d at 743-44 (emphasis added); see also Eccles Lumber Co. v. Martin, 87 P. 713, 716 (1906) ("'A lien once acquired by labor performed on a building with the consent of the owner should not ... be defeated by technicalities, when no rights of others are infringed, and no express command of the statute is disregarded.'") (emphasis added) (quoting 20 Am & Eng. Ency. Law at 276).

To determine whether a lien holder has substantially complied with the Act, Utah courts look at "whether interested parties have been informed of the existence of the lien and whether the lien has misled or prejudiced those parties." For-Shor Co. v. Early, 828 P.2d 1080, 1084-85 (Utah Ct. App. 1992) (emphasis added). "When lien notices have sufficiently informed interested persons that a lien exists on identifiable property and the complaining party has not been misled by the notice, the purpose of the provisions has not been thwarted and courts are inclined to find substantial compliance." Id. (emphasis added). Substantial compliance "is measured by its potential for harm or prejudice. A defect in compliance may be excused as insubstantial if it cannot have any meaningful impact on other parties." VCS, Inc. v. La Salle Development, LLC, 293 P.3d 290, 298 (Utah 2012) (emphasis added).

### (i)     Reputed Owner

As noted above, for identification of the party against whom the lien is filed, the statute requires only that a mechanic's lien notice state "the name of the reputed owner if known, or, if not known, the name of the record owner." Utah Code Ann. § 38-1-7(2)(a)(i) (emphasis added). Utah's mechanic's lien statute does not define "reputed owner," although the Act's use of the words "reputed owner" strongly suggests that a failure to name one or more fee title owners in

13

the lien notice is not a sufficient reason to invalidate a lien. Looking at case law in other jurisdictions, the court finds the following definition of "reputed owner" instructive: "a person or entity <u>reasonably and in good faith</u> believed to be the owner by those involved with the work or improvement <u>including the general contractor</u> and those furnishing labor, service, equipment or material to be used in the work of improvement." <u>Brown Co. v. Superior Court of Cal., Cty. of San Bernardino, Appellate Dep't</u>, 148 Cal. App. 3d 891, 900, 196 Cal. Rptr. 258, 263 (Cal. Ct. App. 1983) (emphasis added). <u>See also</u> <u>Western Insulated Glass Co. v. McKay</u>, 852 P.2d 412, 413 (Ariz. 1993) ("A reputed owner has been defined as 'one who has for all appearances title and possession of property; one who, from all appearances or from supposition, is the owner of a thing.'") (internal citation omitted); <u>Kodiak Indus., Inc. v. Ellis</u>, 185 Cal. App. 3d 75, 229 Cal. Rptr. 418, 426 (Cal. Ct. App. 1986) ("'the question of what efforts [the lien claimant] made to ascertain the name of the owner goes not to the definition of 'reputed owner' but to the question of whether [the claimant] reasonably and in good faith believed the [party served with notice] to be the owner or reputed owner.'") (quoting <u>Brown Co.</u> at 900); <u>Moore Elec. Co. v. Ambassador Builder Corp.</u>, 653 P.2d 90, 92 (Colo. Ct. App. 1982) ("'Reputed owner' is defined as one who has to all appearances the title to, and possession of, the property."); <u>LTF Real Estate Co., Inc. v. D&D Utility Supply, LLC</u>, 2013 WL 1183300, Case No. 01-11-00244-CV (Tex. Ct. App. Mar. 21, 2013) ("Chapter 43 of the Texas Property Code does not define 'owner' or 'reputed owner.' The term 'reputed' is defined as to 'be generally said or believed to exist or be of a particular type, despite not being so.' The New Oxford Am. English Dict. 1447 (2001).").

The relevant time of ownership is the time the work began and the liens attached to the Property. <u>See</u> Utah Code Ann. § 38-1-7(2)(a)(i) (2008); <u>Projects Unlimited</u>, 798 P.2d at 748. At

the time the Claimants began their groundbreaking work, it was reasonable for them to conclude that Summit DM was the reputed owner of the property. The Master Construction Contract between Triton and Summit DM identified Summit DM as the "owner." The Claimants worked with officers of Summit DM. Summit DM issued the advertising brochure for the Project, which described the Project as a single development. Given the circumstances, the court finds that the Claimants' listing of Summit DM as the reputed owner was a good faith attempt to notify the parties with whom they worked that the property for the Project was being encumbered by a lien.[12]

### (ii)    Description of Property and Allocation of Amount Due

Moreover, the liens sufficiently describe the property they encumbered. The Claimants essentially filed blanket liens, which Utah courts have recognized as valid. At the time, as represented to the public, the Project was a single project or enterprise run by Summit DM. The liens listed tax ID parcel numbers, and attached to those lien notices were legal descriptions of sections of the Property, including planned locations for golf course holes, a driving range, a clubhouse, a maintenance facility, and, in some instances, locations of proposed subdivisions.

The Toquerville Defendants assert that the liens, which involve "multiple parcels with multiple owners,"[13] do not follow the express requirements of Utah's Mechanic's Lien Act Section 38-1-8. According to them, the notices of lien failed to "designate the amount to be

---

[12]3 Rivers listed Marlowe's Paradise, LLC, as the reputed owner. There is no evidence that Marlowe's Paradise was not a reputed owner.

[13]Toquerville Defs.' Mot. for Summ. J. (Doc. No. 248) at 2.

claimed to be due to the claimant on each parcel[.]"[14]  In other words, they contend that each

Notice of Lien is an improper blanket lien.[15]

A blanket lien is not invalid for failing to allocate the amounts due.  Projects Unlimited,

Inc. v. Copper State Thrift & Loan Co., 798 P.2d 738, 747 (Utah 1990) (citing Eccles Lumber

Co. v. Martin, 87 P. 713, 717 (1906)).  "[A]llocation [is] necessary 'to protect the interests of the

lien claimants between and among themselves,'" not the property owners.  Id. (quoting Eccles)

(emphasis added).)  Given the circumstances, the Claimants had no practical ability to allocate

amounts due among parcels.

As Plaintiffs note, it would have been impossible to strictly comply with the statute.  At

the time work commenced and Plaintiffs' liens attached, there were no subdivisions, no

designation of parcels, and no way for Plaintiffs (or any lien claimant for that matter) to

individually allocate an amount of work performed to one specific owner."  (Pls.' Mem. Opp'n

Toquerville Defendants' First Motion (Doc. No. 251) at 18.)  Given the undeveloped nature of

what was marketed as one overall development, the Claimants could not have complied more

fully than they did.

The Claimants also point out that describing more property in a lien than was subject to

the lien does not necessarily invalidate the lien.  "[N]o purpose of the mechanic's lien statute

---

[14]Id. (emphasis added).

[15]The Toquerville Defendants also focus on the portion of the Act which provides that
"[l]iens against two or more buildings or other improvements owned by the same person may be
included in one claim; but in such case the person filing the claim must designate the amount
claimed to be due to him on each of such buildings or other improvements." Utah Code Ann.
§ 38-1-8 (West 2008) (emphasis added).  (In 2012, this section was re-codified at Utah Code
Annotated § 38-1a-304.)  Plaintiffs correctly state that this requirement is not applicable because
each lien deals with one undividable improvement (for example, geotechnical work or grading).

would be served by totally invalidating a lien which overdescribes the property upon which the lien can properly attach." Projects Unlimited, 798 P.2d at 748. "[T]he general rule is that the inclusion of 'more land than that to which the lien may properly attach does not vitiate the lien upon so much of the land as is encompassed within the description and to which a lien may properly attach, at least if the description is not fraudulent or grossly misleading and innocent third parties are not affected.'" Id. (quoting Annotation, "Sufficiency of notice, claim, or statement of Mechanic's lien with respect to description or location of real property," 52 A.L.R.2d 12, 83 (1957)). In such a case, the court, if necessary, can sever the invalid portion of the lien from the valid portion and limit the lien to a specific amount of land. See id.

The overarching purpose of Utah's Mechanic's Lien Act is "'to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor.'" Projects Unlimited, 798 P.2d at 743 (quoting Calder Bros. Co. v. Anderson, 652 P.2d 922, 924 (Utah 1982)). Here, there is no dispute that the Claimants, by their work on the Project, added directly to the value of the Collina Tinta Property, and, as the Plaintiffs note, "[t]he 'one enterprise' nature of the project necessitated a blanket lien filing." (Pls.' Opp'n to Mot. Summ. J. (Doc. No. 251) at 17.)

### (iii) **Prejudice**

Certainly, compliance with the statutory requirements for a mechanic's lien is very important because "[a] lien creates an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit." First Sec. Mortg. Co. v. Hansen, 631 P.2d 919, 922 (Utah 1981). The Toquerville Defendants contend that the Claimants' "failure to follow the law and set forth claim amounts on each parcel of property liened prejudices property

owners as it effectively eliminates a property owner's right to save his property by paying for the actual improvements made only to his property." (Toquerville Defs.' Mem. Supp. Mot. Summ. J. (Doc. No. 249) at 21 (emphasis in original).) They further state that "the failure to delineate dollar claims on liened property also impermissibly allows for cost shifting from one parcel to another, effectively burdening one property owner and unduly enriching another by making one property owner pay for improvements to another property owner's land." (Id.) The Toquerville Defendants and CRE have presented scenarios of possible prejudice but have not identified with specific evidence how they are prejudiced.

Plaintiffs sent the notices of liens to the owners of record and other interested persons at the time the lien notices were given. (See Pls.' Cross-Mot. Summ. J. (Doc. No. 345) at 27-28.) Notice is sufficient and not prejudicial and misleading when given to a person or entity that shares an "identity of interests" with the owners of the property. Parties share an "identity of interest" when "the parties are so closely related in their business operations that notice of the action against one serves to provide notice of the action to the other." VCS, Inc. v. LaSalle Dev., LLC, 293 P.3d 290, 296 (Utah 2012) (internal quotation marks and citation omitted). The Toquerville Defendants received sufficient notice. (See Cross-Motion (Doc. No. 345) at 29-30.) "The overlap in leadership, membership, and interests between Summit DM and Toquerville Enterprises, the degree to which their operations were intertwined, and the continuous contact between Toquerville, Jerald Spilsbury, and Summit DM amounted to a shared 'identity of interest' between the owners of the Lien Property at the time the lien notice was filed." (Id. at 30-31.)

18

### (iv)    Conclusion

The Claimants substantially complied with the Act's requirements, and the liens are valid and enforceable.  To find otherwise would result in an inequity the Act was designed to prevent. See also Buehner Block Co. v. Glezos, 310 P.2d 517, 520 (Utah 1957) ("The lien attaches to the property.  All the statute requires is that the notice of lien contain the name of the owner, if known[;] the person to whom the labor or materials was furnished; the terms of the contract; the dates when the first and last materials were furnished; a description of the property; and a statement of the lienor's demand.  When these requirements are met it is not essential to the validity of the lien that the names of others whose interests might be affected thereby be stated. Indeed in many instances such knowledge might be unavailable to the lienor and such requirement could defeat his claim of lien.") (emphasis added).

The Notices were as specific as possible, listing legal descriptions of the portions of the Project to which their work applied.  The Notices are not misleading.  See ForShor, 828 P.2d at 1084-85.  Any alleged prejudice was caused by the complexity of the private business transactions and post-construction-work financial problems and failure of the Project, not the lien notices themselves.

For the foregoing reasons, the court finds that the Claimants have established "by a preponderance of the evidence the probable validity of the real property claim[s] that are the subject of the notice[s]."  Utah Code Ann. § 78B-6-1304(2).  Accordingly, the Toquerville Defendants' First Motion is denied and the Plaintiffs' Cross-Motion is granted.

### c.    Excessive Lien Motion

The Toquerville Defendants filed a motion to strike Triton's liens as excessive.  In their

motion, they ask for permission to amend their complaint to add a claim against Triton under Utah Code Ann. § 38-1-25(2) (2008).[16]  They then argue that Triton has violated that section, and they seek damages.  For the reasons set forth below, the court grants in part and denies in part the Excessive Lien Motion.

The court gives permission to the Toquerville Defendants to amend their complaint to add an excessive lien claim against Triton.  <u>See</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  First, it appears that Triton does not oppose the requested amendment.  Triton does not address the request in its opposition brief, but rather argues the merits of the proposed claim.  Second, the Toquerville Defendants represent that they were not aware of alleged facts that would give rise to a claim under § 38-1-25(2) until December 2013, and they filed their motion to amend only three months later.  Third, adding the claim against Triton will not prejudice the remaining parties' interests because the dispute is wholly between Triton and the Toquerville Defendants.

The court, however, denies the Toquerville Defendants' motion for summary judgment on the excessive lien claim.  Evidence in the record creates a material dispute about whether Triton's demand was greater than the amount due.  (<u>See, e.g.</u>, Triton's Opp'n Mem. (Doc. No. 378) at 6; Aff. of Marcus Leavitt (Ex. 2 to Triton's Opp'n Mem.) ¶¶ 4-6.)  In addition, the element of intent is genuinely disputed by Triton.  The statute, titled "Abuse of lien right," provides as follows:

> Any person entitled to record or file a lien under Section 38-1-3 is [subject to civil liability under Section 38-1-25(2) if the person] <u>intentionally</u> causes a claim of

_____

[16]In 2012, this section was recodified at Utah Code Ann. § 38-1a-308.

lien against any property containing a greater demand than the sum due to be
recorded or filed: (a) with the intent to cloud title; (b) to exact from the owner or
person liable by means of the excessive claim of lien more than is due; or (c) to
procure any unjustified advantage or benefit.

Utah Code Ann. § 38-1-25 (2008) (emphasis added).  The court finds that evidence in the record

creates a material dispute about whether Triton had the requisite intent when it filed the liens.

(See, e.g., Triton's Opp'n Mem. (Doc. No. 378) at 5; Aff. of Marcus Leavitt ¶ 6.)  Accordingly,

the Toquerville Defendants are not entitled to summary judgment on their excessive lien claim.

**2.**     **Plaintiffs' "Quiet Title" Claim**

Plaintiffs Triton and Western States included a claim for Quiet Title in their complaint.

(See Second Cause of Action in Pls.' First Am. Compl. in Utah state court case No. 08051763

(Doc. No. 2-1), attached as Ex. A to Notice of Removal.)  In that claim, they seek to enforce their

mechanic's liens and foreclose on the Property.  (Id. ¶¶ 27-52.)  The Toquerville Defendants and

CRE have both moved to dismiss the claim on the ground that a quiet title action is an

inappropriate vehicle to obtain the remedy Plaintiffs seek.  The court agrees.  (But the court does

not agree that the Plaintiffs have not pleaded a proper cause of action under the mechanic's lien

statute, as noted above.)

Plaintiffs cite to Utah Code Ann. § 78B-6-1301, which provides that "[a] person may

bring an action against another person to determine rights, interests, or claims to or in personal or

real property."  To succeed in an action to quiet title, "all a party need do is prove prima facie

that he has title[.]"  Gillmor v. Blue Ledge Corp., 217 P.3d 723, 728 (Utah Ct. App. 2009)

(quoting Babcock v. Dangerfield, 94 P.2d 862, 863 (Utah 1939)).  In addition, "[a] true quiet title

action is a suit brought to quiet an existing title against an adverse or hostile claim of another,

and the effect of a decree quieting title is not to vest title, but rather is to perfect an existing title as to other claimants." In re Hoopiiaina Trust, 144 P.3d 1129, 1137 (emphasis in original) (internal citation and quotation marks omitted).

In their First Amended Complaint, Western States and Triton do not allege that they have title to the Property. Instead, they admit that other parties to this case have legal title in the Property. (See Pls.' First Am. Compl. ¶¶ 4-6.)

An action to quiet title is based on legal title to a property. In contrast, an action to enforce a lien cannot be based upon title to the property because a lien does not confer title. Citizens Bank v. Elks Bldg., N.V., 663 P.2d 56, 59 (Utah 1983) ("[A] lien does not create a title to, or an estate interest in the property. In other words, a lien gives the lienholder a right to collect his debt out of the charged property, but it does not give him an ownership interest in the property.") (internal citation omitted). Because an action to quiet title adjudicates a different legal right than one vested through a lien, quiet title is not a valid substitute for the procedures for enforcing a mechanic's lien.

Plaintiffs rely on R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A., 100 P.3d 1159 (Utah 2004), to support their position that a quiet title action is an appropriate mode to enforce a mechanic's lien because mechanic's liens are interests in real property. In R.A. McKell Excavating, the Utah Supreme Court stated, in dictum, that a quiet title action, "in those rare instances where a lien claimant's interest is served by denying that 'final completion' [of the construction contract] has occurred, a quiet title action remains a viable option for property owners seeking to expeditiously resolve such disputes." Id. at 1162 (emphasis added). Plaintiffs, citing to that language, reason that "[i]f a quiet title action is an appropriate mechanism for

removing a mechanic's lien, it stands to reason that a quiet title action is likewise an appropriate mechanism to establish the validity of and enforce a mechanic's lien." (Pls.' Opp'n Mem. to CRC's Mot. Partial Summ. (Doc. No. 377) at 13.) Despite Plaintiffs' contention, the reverse does not necessarily hold true. R.A. McKell Excavating does not support the Plaintiffs' position, and they do not cite to any other applicable authority. They cannot change the fact that they do not have title to the Property, and they cannot overcome the express requirement that a quiet title claimant must have title before bringing such an action.

To the extent that the Plaintiffs seek to use the Quiet Title Act to enforce their liens, they may not, because, as a matter of law, the Plaintiffs cannot succeed on an action for quiet title.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The Toquerville Defendants' Cross-Motion for Summary Judgment seeking dismissal on the basis of the validity of liens filed by Triton Grading & Paving LLC and Western States Contracting (Doc. No. 248) is DENIED. Moreover, for the reasons set forth in footnote 6 above, the portion of the Toquerville Defendants' Motion filed against ECCO Equipment Corporation, Inc., Psomas Corporation, and Worldwide Rental Services (Doc. No. 248) is DENIED AS MOOT.

2.      Western States and Triton's Motion for Partial Summary Judgment (Doc. No. 345) on the validity of liens is GRANTED.

3.      Toquerville Defendants' Countermotion for Partial Summary Judgment and Motion to Strike Excessive Lien and for Damages Pursuant to UCA § 38-1-25 (Doc. No. 355) is GRANTED IN PART AND DENIED IN PART as follows: The Toquerville Defendants are granted permission to add a claim against Triton Grading & Paving LLC under Utah Code Ann. § 38-1-25 (2008), and

should file their amended counterclaim as soon as practicable. But their request for summary judgment on their excessive lien claim is denied.

4.      The Toquerville Defendants' Motion for Partial Summary Judgment (Doc. No. 368) and CRE/ADC Venture 2012-1, LLC's Motion for Partial Summary Judgment (Doc. No. 356) are GRANTED IN PART AND DENIED IN PART. Plaintiffs' quiet title claim is dismissed, but the Plaintiffs' claim for enforcement of mechanic's liens is properly pled, so the court will not dismiss that claim.

5.      For the reasons set forth in footnote 8 above, Third-Party Ranch Excavation & Construction, Inc.'s Motion for Partial for Summary Judgment (Doc. No. 375) is DENIED WITHOUT PREJUDICE.

DATED this 26th day of August, 2014.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge